IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOHN CARTER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-239 (RCY) |
| ) | |
| ESKER (LEE) TATUM, ) | |
| WARDEN OF LAWRENCEVILLE ) | |
| CORRECTIONAL CENTER ) | |
| (in his official and individual capacity), ) | |
| ) | |
| THE GEO GROUP ) | |
| LAWRENCEVILLE CORRECTIONAL ) | |
| CENTER, ) | |
| ) | |
| and ) | |
| ) | |
| UNKNOWN OFFICERS ) | |
| (in their official and individual capacities), ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This is a § 1983 action arising from injuries Plaintiff sustained while incarcerated and placed under the care and supervision of Defendants. The matter is before the Court on Defendant GEO Group's and Defendant Esker Lee Tatum's (collectively, "Movants") jointly filed First Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (ECF No. 13). The issues for the Court to decide are: (1) whether Plaintiff has adequately pled a Failure to Protect claim against Movants, and (2) whether Plaintiff has adequately pled a Failure to Supervise and Train claim against Movants. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons stated herein, the Court will grant the Defendants' Motion to Dismiss as to Plaintiff's claims in Counts I and II against Defendant Tatum and as to Count II against Defendant GEO Group, bu t deny the Motion to Dismiss as to Count I against GEO Group.[1]

## I. BACKGROUND

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The standard does not require the acceptance of unreasonable inferences or a plaintiff's legal conclusions. *Id.* The facts advanced in the Complaint—accepted as true at this stage—are as follows.

In 2021, Plaintiff John Carter ("Plaintiff" or "Carter") was an inmate at the Lawrenceville Correctional Center. Compl. ¶ 11, ECF No. 1. Defendant Esker (Lee) Tatum ("Defendant Tatum") was, at all relevant times, the Warden of Lawrenceville Correctional Center. *Id.* ¶ 6. Defendant GEO Group ("GEO" or "GEO Group") is a Florida Corporation under contract with the Virginia Department of Corrections to oversee daily operations and administration of the facility. *Id.* ¶ 5. Plaintiff alleges that inmates affiliated with gangs at the prison facility were able to act with impunity against other inmates and staff who were not gang members. *Id.* ¶¶ 11–28; 35. Plaintiff points to news media reports to allege a pattern of mismanagement and under-staffing at the prison leading to violence and other security issues. *Id.* ¶ 9.

Plaintiff specifically alleges that on April 9, 2021, certain Defendant Unknown Officers intentionally and improperly provided three violent, gang-affiliated inmates access to the living quarters, or "pod," where Plaintiff was housed. *Id.* ¶ 11. According to Plaintiff, these particular

---

[1] The Court does not address Plaintiff's § 1983 claim (also part of Count I) against non-movant Defendant Unknown Officers in the present Opinion.

inmates were well-known within the prison as gang members who had received multiple infractions for violence against other inmates. *Id.* ¶¶ 11, 27. These inmates were not assigned to Plaintiff's pod and did not normally have access to it. *Id.* ¶ 11. Plaintiff asserts that a set of officers monitoring the pod from a security booth granted access to the group of three inmates because other members of their gang were located within the pod. *Id.* ¶¶ 12–13. Once inside the pod, the three inmates began taking Plaintiff's belongings. *Id.* ¶ 15. Seeing a knife blade on one of the three inmates, Plaintiff did not intervene. *Id*. However, upon identifying an opportunity to seek help at a guard station, Plaintiff grabbed his belongings, ran toward the security booth, and yelled for help. *Id.* ¶¶ 16–17. Plaintiff contends the guards ignored him. *Id*. ¶ 17) The three inmates then allegedly chased after and attacked Plaintiff, who sustained injuries including two black eyes, a busted lip, bruising, and a broken ankle. *Id.* ¶¶ 17, 19, 22.

     According to Plaintiff's account, the three inmates ran toward the pod's exit immediately after the attack where a guard opened the door and allowed them to escape. *Id.* ¶ 20. Guards then attended to Plaintiff and called an ambulance. *Id*. Plaintiff received emergency surgery to treat his ankle injury and remained in the hospital for two days. *Id.* ¶¶ 21–22. Upon returning to Lawrenceville Correctional Facility, Plaintiff spent two weeks recovering in the infirmary. *Id.* ¶ 22.) When Plaintiff was able to return to general population housing, he was placed in the same pod where he had been attacked. *Id.* ¶ 23. Plaintiff reports experiencing threats and harassment for six days until he was moved to segregated housing. *Id.* ¶ 24. He used a wheelchair from April 2021 to June 2021 while recovering. *Id*. ¶ 22. On August 7, 2022, the Virginia Department of Corrections transferred Plaintiff to Indian Creek Correctional Center. *Id.* ¶ 24. He alleges extreme and ongoing back and ankle pain. *Id.* ¶ 26.

## II. PROCEDURAL HISTORY

Mr. Carter filed his Complaint (ECF No. 1) on April 8, 2023. Defendants Tatum and GEO Group filed their Motion to Dismiss for Failure to State a Claim with a supporting Memorandum on May 23, 2023 (ECF Nos. 13, 14). Plaintiff filed his Response in Opposition to the Motion to Dismiss for Failure to State a Claim on June 6, 2023 (ECF No. 18). Defendants filed their Reply to Plaintiff's Response on June 12, 2023 (ECF No. 19).

## III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the

complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* (citing *Twombly*, 550 U.S. at 555, 557). At the motion to dismiss stage, a Court may consider documents incorporated into the complaint, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and it may also consider any documents attached to the motion to dismiss if those documents are essential to the plaintiff's claim or are "sufficiently referred to in the complaint," as long as there is no challenge of their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

## IV. ANALYSIS

The Eighth Amendment to the U.S. Constitution protects individuals from cruel and unusual punishment. U.S. Const. amend. VIII. As interpreted by the Supreme Court in the prison context, the Amendment requires that inmates be furnished with basic human needs, one of which is "reasonable safety." *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Individuals who believe their rights have been denied under this or any other provision of the Constitution may seek redress

under 42 U.S.C. § 1983, which provides in relevant part that:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1996).

For a prisoner to bring an action under § 1983, they must allege a deprivation of constitutional rights that is, objectively, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Fourth Circuit has determined that a "sufficiently serious" deprivation is one that amounts to "a serious or significant physical or emotional injury resulting from the challenged conditions." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). A combination of prison conditions can, in their totality, constitute an Eighth Amendment violation sufficient to sustain a § 1983 claim. *See Kovari v. Brevard Extraditions, LLC, et al.*, 461 F. Supp. 3d 353, 382 (W.D. Va. 2020) (citing *Williams v. Griffin*, 952 F.2d 820, 825 (4th Cir. 1995)); *see, e.g.*, *Webb v. Deboo*, 423 F. App'x 299, 301 (4th Cir. 2011) (finding severe overcrowding resulting in an increased risk of violence, among other negative effects, which in combination violated the Eighth Amendment).

In addition to alleging a sufficiently serious deprivation of rights, a prisoner must further allege deliberate indifference by prison officials. *See generally Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter,* 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference, according to the Supreme Court, "entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 828. Unaddressed conditions that threaten future harm can constitute actionable, deliberate indifference. *See Helling*, 509 U.S. at 33–34

(holding that the respondent stated a cause of action under the Eighth Amendment by alleging that prison officials exposed him to environmental tobacco smoke posing an involuntary, unreasonable, and serious risk to his future health). If prison officials know that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it, they may be held liable for denying humane conditions of confinement under the Eighth Amendment. *See Farmer*, 511 U.S. at 828.

Finally, the Supreme Court has clarified that a subjective intent requirement is implicit in the Constitution's prohibition against cruel and unusual punishment. *See Wilson*, 501 U.S. at 296; *Farmer*, 511 U.S. at 826. As a result, a prisoner claiming that conditions of his confinement violate the Eighth Amendment must show a culpable state of mind on the part of prison officials—specifically, an intent reflecting the "unnecessary and wanton infliction of pain." *See Wilson,* 501 U.S. at 298 (citing *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Mere inadvertence, accident, or error in good faith that results in added anguish for an inmate does not characterize conduct prohibited by the Cruel and Unusual Punishments Clause. *See Whitley*, 475 U.S. at 314; *Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 105.

Theories of respondeat superior, i.e., vicarious liability, face a heightened standard under § 1983 lawsuits. *Turner v. Kight*, 121 F. App'x 9, *14 (4th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To establish a viable claim for vicarious liability under § 1983, a plaintiff must show: (1) actual or constructive knowledge of a risk of constitutional injury; (2) deliberate indifference to that risk; and (3) an "affirmative causal link" between the supervisor's inaction and the constitutional injury suffered. *Id.* at *14 (citing *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999)) (quoting *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994)). With regard to the third causation element, supervisors must have "direct culpability" in causing the

plaintiff's injuries. *McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996). The Fourth Circuit has recognized § 1983 claims against supervisory employees where citizens "face a pervasive and unreasonable risk of harm from some specified source…[and] the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive [practices]." *Carter v. Morris*, 164 F.3d 215, 220–21 (4th Cir. 1999) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)) (internal quotation marks omitted).

Section 1983 claims against contractors responsible for prison operation are evaluated based on the same rules and standards that apply to claims against municipalities. *See Smith v. Atkins et al.*, 777 F. Supp. 2d 955, 968 (E.D.N.C. 2011) (involving a § 1983 action against a private, independent entity contracted to provide medical services to inmates). In the Fourth Circuit, a § 1983 cause of action may be maintained against a private corporation "when execution of the state actor's unconstitutional policy" causes a plaintiff injury. *Kovari*, 461 F. Supp. 3d at 378 (citing *Walker v. Prince George's Co., Md.*, 575 F.3d 426, 431 (4th Cir. 2009)). While a "policy" often refers to formal rules or understandings, "corporate liability may also be imposed for 'a single decision by [corporate] policymakers under appropriate circumstances.'" *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

The Complaint consists of just two Counts, both couched under 42 U.S.C. § 1983: Count I, § 1983 Failure to Protect, and Count II, § 1983 Failure to Supervise and Train. Movants are each named in both Counts. The Court considers whether Plaintiff has stated a claim as to each Defendant in each count in turn.

**A. Count I: Failure to Protect**

Plaintiff Carter asserts that Defendants failed to protect him against cruel and unusual

punishment by being deliberately indifferent to a substantial risk of serious harm at the hands of other, dangerous inmates. Compl. ¶ 33, ECF No. 1. Plaintiff further contends that he suffered and continues to suffer from serve injury as a direct result of the violent attack he endured because of Defendants' deliberately indifferent acts. (*Id.* ¶ 36.) Defendants Tatum and GEO Group counter that the factual allegations pled by Plaintiff in support of Count I relate only to Defendant Unknown Officers. Mem. Supp. Mot. Dismiss 6, ECF No. 14. According to Defendants, Plaintiff's failure to identify specific actions by Defendant Tatum and Defendant GEO Group render the allegations conclusory and fit for dismissal. *Id.*

The 1994 Supreme Court case *Farmer v. Brennan* established that prison officials are required to protect prisoners from violence at the hands of other prisoners as part of the Eighth Amendment duty to provide humane conditions of confinement. 511 U.S. at 825. In *Farmer*, the court treated the officials' knowledge as a question of fact, leaving the door open for a factfinder to infer the officials knew of a substantial risk of danger from the very fact that the risk was obvious. *Id*. at 842. *Farmer* provides a basis for official liability where the official knew of a risk but did not think a particular prisoner was especially likely to suffer harm. *Id.* It does not matter, *Farmer* states, whether the risk came from a particular source, whether the prisoner faced the risk for reasons personal to him, or whether all prisoners faced the same risk. *Id.* at 843. A prison official violates the Eighth Amendment with deliberate indifference when he is subjectively aware of a substantial risk of harm and disregards that risk. *Id.* at 825. A prison official who acts reasonably, however, cannot be found liable. *Id.* at 844.

    1. <u>Plaintiff's Failure to Protect Claim against Defendant Tatum</u>

As Defendant Tatum was not directly involved in the circumstances of Plaintiff's assault and injury, Plaintiff's claims against Defendant Tatum must be predicated on a theory of vicarious

liability.  Applying the standard recited above, the Court finds that Plaintiff does not state a vicarious liability claim for Failure to Protect against Defendant Tatum under § 1983.

As to the first of the three requirements for establishing a viable claim of vicarious liability—knowledge of risk of constitutional injury—Plaintiff does not allege any facts to show Defendant Tatum's actual knowledge of prisoner-on-prisoner violence or patterns of violent gang activity at the facility.  The Court reads the Complaint as suggesting that Defendant Tatum had constructive knowledge of the risk of constitutional injury based on news reports of injuries and deaths taking place inside the prison.  Compl. ¶¶ 9–10, 28.  However, none of the articles specifically name or quote Defendant Tatum, nor do they make connections between his leadership and negative outcomes.  *Id.*

The lack of facts alleging Defendant Tatum's actual or constructive knowledge in the Complaint also precludes finding that Plaintiff sufficiently alleged deliberate indifference, the second element of a vicarious liability claim.  As stated above, deliberate indifference requires that the defendant have a subjective, culpable state of mind.  *See Wilson,* 501 U.S. at 296.  While, pre-discovery, Plaintiff Carter understandably has little access to information that would provide insight into Defendant Tatum's intent.  However, the mere fact that Tatum occupied the role of prison warden does not support an allegation of deliberate indifference.

The third requirement for a viable supervisory claim under § 1983 demands a supervisor's direct culpability in causing the plaintiff's alleged constitutional injury.  *See McWilliams*, 72 F.3d at 1197.  Plaintiff alleges generally that Defendant Tatum "exercises authority, directions and control over Lawrenceville Correctional Center."  Compl. ¶ 6.  However, without supplemental information about Defendant Tatum's specific duties—such as decision making regarding allocating staff to different areas of the prison, management of gang activity, or direct supervision

of the Defendant Unknown Officers—and their connection to Plaintiff's particular injury, the allegation collapses into a simple identification of Defendant Tatum as the prison's warden.

Plaintiff Carter comes closer to alleging direct involvement by Defendant Tatum when he alleges that "prison administration" placed him in the same housing pod after his attack and thus subjected him to threats and harassment until he was transferred to segregated housing six days later. Compl. ¶¶ 23–24. After the attack took place, it is plausible that Defendant Tatum knew that a violent incident had occurred within the facility he managed. It is also plausible that he further knew, in a constructive sense, that Plaintiff would be vulnerable to additional abuse by prisoners who had witnessed or learned of his previous attack. However, this purported involvement was *after* the constitutional injury Plaintiff has alleged as the foundation for his claim, i.e., the assault. And even if Plaintiff were attempting to allege that the post-attack threats and harassment also constituted a constitutional violation, this argument in unavailing: harassment and antagonization by other prisoners does not amount to a constitutional injury that is sufficiently serious to form the basis of a § 1983 Failure to Protect claim. *See Brown v. Lawhorne*, 2015 WL 3464141, at *4 (D. Md. May 28, 2015) ("Verbal harassment and aggravating language, without more, do not amount to a constitutional violation."); *see also* Martin A. Schwartz & Touro Law Center, *Section 1983 Litigation* 118 (Kris Markarian ed., Federal Judicial Center 3d ed. 2014) ("The plaintiff must demonstrate that the supervisor was a constitutional wrongdoer.").

Accordingly, because Plaintiff does not allege facts that could support findings of knowledge, deliberate indifference, and direct participation, Defendants' Motion as to Count I of the Complaint will be granted as it relates to Defendant Tatum.

2. Plaintiff's Failure to Protect Claim against GEO Group

Plaintiff's claim against Defendant GEO Group is also based on a theory of vicarious

liability and therefore faces many of the same obstacles discussed above with regard to Plaintiff's Failure to Protect claim against Defendant Tatum.  However, specific facts raised in the Complaint lend more support to Plaintiff's allegations against GEO Group and ultimately render the claim against GEO Group sufficient to survive the Motion to Dismiss at bar.

   As Defendants point out, four of the five news articles cited by Plaintiff in an effort to demonstrate an ongoing pattern of violence and mismanagement at the prison facility refer to incidents taking place after Plaintiff's attack.  Mem. Supp. Mot. Dismiss. 8.  But the January 2021 article—published before the central incident in this case—describes routine staffing issues in breach of GEO's contract with the state leading to thousands of dollars in fines and numerous complaints about prison conditions.  *See* Kerri O'Brien, *Virginia's Only Private Prison is Routinely Short-Staffed and in Breach of its Contract with the State*, ABC 8 NEWS (Jan. 29, 2021, 5:57 PM).  The article repeatedly names GEO as the responsible administrative party.  *Id.*  A spokesperson from GEO also provided a statement to the news organization and commented on various allegations.  *Id.*  GEO's engagement with the news organization and recognition of "staffing challenges" support a finding that it had actual or constructive knowledge of staffing issues that threatened the security of guards, inmates, and the community more than two months before the violent attack.  *See id.*  When Plaintiff alleges that the prison was in fact understaffed at the time of the attack, he suggests that GEO disregarded a staffing issue and risk of harm it knew existed, which is the essence of a § 1983 deliberate indifference claim.  Compl. ¶ 17.  If GEO Group knew in advance that inmates faced substantial risk of harm due to its staffing issues and disregarded that risk by failing to take reasonable measures to abate it, it can be held liable for denying humane conditions of confinement under the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. at 825.

To address the causation element of Plaintiff's claim against GEO, Plaintiff alleges that the attack did not commence until after he had yelled for help at the guard station and was ignored. Compl. ¶ 17. Plaintiff also alleges that an intercom system he could have used to notify guards that he faced an emergency situation was not functioning at the time of his assault. *Id.* ¶ 18. Defendants object to the Court's consideration of Plaintiff's intercom system allegation because it is "speculative." Mem. Supp. Mot. Dismiss. 4–5. However, the Court accepts Plaintiff's allegation as true at this stage, *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); the operation of the intercom system is a question suitable for exploration during discovery, not something for the Court to resolve on a motion to dismiss. A lack of officer presence near and within Plaintiff's pod, an inoperable emergency intercom system, and the failure of guards stationed at a security booth to promptly respond to a live security issue could plausibly have— either individually or collectively—contributed to the attack and Plaintiff's resulting injuries.

Altogether, the facts alleged in the Complaint plausibly state a § 1983 claim against GEO Group as the entity responsible for the administration and operation of Lawrenceville Correctional Center broadly and for the safety of individuals in custody like Plaintiff. Defendants' motion as to Count I of the Complaint will be denied as it relates to Defendant GEO Group.

**B. Count II: Failure to Supervise and Train**

Plaintiff alleges that despite knowing of "rampant violations of security and rampant inmate on inmate violence" creating a "pervasive and unreasonable risk [to inmates]," Defendants Tatum and GEO Group acted with deliberate indifference by creating "a practice, custom, and/or policy where inmates are subject to violence from other inmates." Compl. ¶¶ 38–39. Plaintiff characterizes these "deficient" customs, policies, and practices as the proximate cause and "moving force" behind his injuries, the suffering of which constituted a deprivation of his

constitutional rights. *Id*. ¶¶ 42, 45.  Plaintiff more specifically alleges that Defendants "failed to ensure that officers were properly trained" to prevent and respond to "an inmate on inmate attack" and "fail[ed] to adhere to policy" preventing "violent inmates [from accessing] pods in which they were not housed . . . ." *Id*. ¶¶ 40, 42.  Defendants counter that Plaintiff's Complaint merely alleges conclusory allegations and recitations of legal elements, unsupported by specific factual assertions. Mem. Supp. Mot. Dismiss. 7–8.

As discussed above, an official violates an inmate's right to be free from cruel and unusual punishment under the Eighth Amendment when the officer exhibits deliberate indifference. Conduct meets the high standard for deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.  The two-prong standard for assessing the Failure to Protect claim in this case also applies to Count II alleging Failure to Supervise and Train.  The first, objective prong asks whether the constitutional violation is "sufficiently serious." *Farmer*, 511 U.S. at 834.  The second, subjective prong requires that the accused prison official know of a substantial risk of serious harm facing an inmate (or inmates at the facility generally) and disregard that risk by failing to take reasonable measures to abate it. *See id* at 834–35.  To find a defendant liable for a failure to train or supervise subordinates or employees, a plaintiff must show that the subordinate(s) actually violated plaintiff's rights; that the supervisor(s) did not properly supervise or train the subordinate(s); and that the failure to supervise or train caused the subordinate(s) to violate the plaintiff's rights. *See City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989).  Negligent or even grossly negligent training does not suffice to create a § 1983 claim. *See id.* at 391–92.  A defendant's fault for an alleged failure to act "must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision . . . to violate the Constitution." *Id.* at 394–

14

95; *see also Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (stating that liability under a failure to train theory requires defendant's implementation of an unconstitutional custom, policy, or practice) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 694). A sufficiently close causal connection must exist between the inadequate training and the deprivation of a plaintiff's constitutional right. *City of Canton*, 489 U.S. at 391–92.

      1. Plaintiff's Failure to Supervise and Train Claim against Defendant Tatum

Plaintiff's second claim against Defendant Tatum fails for the same reasons discussed above in assessing Plaintiff's Failure to Protect claim against Defendant Tatum. Namely, the Complaint does not allege specific facts to support Defendant Tatum's culpability in violating Plaintiff's constitutional rights. Compl. ¶¶ 37–45. Allegations against Defendant Tatum as to Count II are largely speculative, conclusory, or both. Defendant Tatum is not individually named in any of the nine paragraphs that form Count II in the Complaint. *Id*. Assuming *arguendo* that Plaintiff has established that subordinate prison officials violated his rights, Plaintiff does not allege any facts describing alleged deficiencies in Defendant Tatum's training or supervision of his subordinates or how such failures caused the resulting violation of Plaintiff's rights. *See City of Canton*, 489 U.S. at 388–92. Instead, Plaintiff provides only bare-bones, conclusory allegations reciting the elements of the claim. Compl. ¶¶ 37–45. The Court must accordingly dismiss Count II against Defendant Tatum.

      2. Plaintiff's Failure to Train and Supervise Claim against GEO Group

Plaintiff's Count II claim against Defendant GEO Group suffers from the same deficiencies as the claim against Defendant Tatum. Plaintiff's allegations in Count II are leveled generally against "Defendants" and, though they reference and reincorporate the facts alleged elsewhere in the Complaint, those facts in their totality do not touch on the nature of GEO Group's training or

supervision practices and policies at Lawrenceville. Instead, there are references to a broken intercom, a failure of prison guards to respond to Plaintiff's calls for help before the assault, and a subsequent belated intervention by the guards. Compl. ¶¶ 17–20. These details are insufficient to sustain a failure to train/supervise claim under § 1983. *See City of Canton*, 489 U.S. at 388–92 (reciting necessary elements of claim); *Owens*, 767 F.3d at 402. Accordingly, Defendants' Motion to Dismiss Count II as to Defendant GEO Group will be granted.

## V. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 13). Specifically, the Court will grant the Motion as to Plaintiff's claims against Defendant Tatum in Counts I and II and as to Plaintiff's claim against GEO Group in Count II. The Court will deny the Motion as to Plaintiff's claim against GEO Group in Count I.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: October 13, 2023